# HUR, LASH & CHOE, LLP
### Attorneys at Law

Scott K. Hur<br>
Direct: (212) 468-5595<br>
shur@hlnylaw.com

May 9, 2023

**Via ECF**
Hon. Katherine Polk Failla, U.S.D.J.
Southern District of New York
40 Foley Square
New York, NY 10007



      Re:    *Aleheri v. 88 Featherbed Apparel Corp. et al.*
              Case Number: 1:22-cv-07994-KPF

Dear Judge Failla:

      We represent the plaintiff, Faridah Aleheri ("Aleheri" or "Plaintiff") in the above-reference matter. This office and Stuart R. Berg, P.C., the attorneys for the defendants ("Defendants") in this matter, jointly submit this letter to advise the Court that the parties have settled the matter and executed a settlement agreement (the "Settlement Agreement") annexed hereto as Exhibit A. The parties respectfully request that the Court approve the Settlement Agreement reached by the parties[1], as the matter is a dispute arising under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

## **FACTUAL BACKGROUND**

      In the Complaint, Plaintiff alleges that Defendants, 88 Featherbed Apparel Corp. *d/b/a* Extreme Department Store, 1457 Westchester Apparel Corp. *d/b/a* Extreme Department Store, 204 Concourse Plaza Discount Corp. *d/b/a* Extreme Department Store, 4697 3rd Ave Discount Corp. *d/b/a* Extreme Department Store, and Mohammad Safi, own and operate a chain of discount stores under the trade name Extreme Department Store, located in Bronx and Queens New York.

      Plaintiff alleged that she was an employee of Defendants, jointly, under the common control of the individual defendant, Mohammad Safi. Plaintiff was employed by 88 Featherbed Apparel Corp. as a salesclerk from approximately April 2021 to July 2022, and alleged that she was not properly compensated for overtime hours and minimum wages in accordance with the

---

[1] The Settlement Agreement is between Defendants and Faridah Aleheri, individually, and not others similarly situated or the class members.

1

FLSA and the NYLL, and she further alleged that Defendants had a policy and practice of not properly compensating their other non-exempt employees for overtime hours and minimum wages. Additionally, Plaintiff alleged that Defendants never provided its employees (i) notices required by the Wage Theft Prevention Act, (ii) timely payment of wages, and (iii) paid sick leave to their employees.

Defendants utilized a punch-in/punch-out clocking system to track its employees' working hours. However, Plaintiff alleged that Defendants underpaid its employees by rounding off the hours worked to the nearest hour or one-half hour. In furtherance of her claims, Plaintiff alleged she regularly was underpaid and the wages she received were not consistent with the hours shown by the punch-in/punch-out timecards. Plaintiff also alleged that she was not paid for the required overtime hours as reflected in those time cards. Plaintiff sought relief from Defendants' violations of the Fair Labor Standards Act ("FLSA") for unpaid minimum wages and overtime premium, and violations of the New York Labor Law ("NYLL") for unpaid minimum wages, overtime premium, spread of hours premium, and statutory damages under NYLL § 198(1-b) and (1-d).

Defendants denied Plaintiff's allegations in the pleading. Defendants maintain that the corporate defendants were operated separately and independently. Defendants further maintain that Plaintiff was paid for all her work hours (at a minimum wage) and for all of the applicable overtime premium, if any were due. Defendants further maintain that the statutory damages under the NYLL §198 are not due because they have made full and timely payment of all wages due to Plaintiff.

The parties engaged in a Court ordered mediation on February 02, 2023, and February 22, 2023, but were unsuccessful in settling the matter at that time. Subsequently, however, the parties engaged in an extensive settlement negotiation in good faith without the mediator's involvement and have reached the settlement with the terms set forth below.

### SETTLEMENT NEGOTIATIONS AND TERMS

The parties began their negotiation as soon as the counsel for Defendants, Stuart Berg, Esq., made his appearance as counsel. Thereafter, the parties have diligently discussed settlement, including by holding two mediation sessions by Zoom® conferences. Shortly thereafter, the parties have exchanged their settlement offers and demands, and have accepted and agreed to the following terms:

Defendants will pay $37,500 for the settlement of all claims asserted in this action as to the Plaintiff, individually. The settlement payment is to be paid not less than twenty (20) days from the Court's approval of the Settlement Agreement, and the payment shall be allocated to the Plaintiff in the amount of $24,250.80 and to Hur, Lash & Choe, LLP, for attorneys' fees and costs, in the amount of $13,249.20.

### THE TERMS OF SETTLEMENT ARE FAIR AND REASONABLE

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In determining whether

2

a settlement is fair and reasonable, the court must consider the totality of circumstances, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Himrod v. Cygnus Med., LLC*, 2020 U.S. Dist. LEXIS 502, at *2-3 (S.D.N.Y. Jan. 2, 2020) (citing *Wolinsky*, 900 F. Supp. 2d at 335).

Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Here, the parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation, and the settlement reflects a reasonable compromise of disputed issues resulting from extensive arms' length negotiations. Additionally, because Plaintiff was no longer employed by Defendants at the time this matter was commenced, there was not and could not have been any undue influence exercised in the workplace upon Plaintiff by their employer to compel or influence any settlement.

*Plaintiff's Range of Possible Recovery*

By Plaintiff's calculation, assuming all her alleged hours are correct, Plaintiff's maximum recovery is $28,156 for unpaid wages and overtime, the same amount as liquidated damages, and an additional $10,000 in statutory damages for a total amount of $66,312. The proposed settlement provides Plaintiff with a recovery of $37,500.00 ($24,250.80 net of attorneys' fees and costs) which is approximately 133% of Plaintiff's claimed unpaid wages and overtime (or 86% of her unpaid wages and overtime after deducting her attorneys' fees and costs).

*The Extent to Which the Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and the Seriousness of the Litigation Risks Faced by the Parties*

The purpose of a settlement is to avoid a trial on the merits because of the uncertainty of the potential outcome. *See Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff … against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2013 U.S. Dist. LEXIS 47526, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Defendants allege that they maintained contemporaneous records of the dates and times Plaintiff worked and claim that any "rounding off" of hours were fully compensated by paying cash to Plaintiff. Plaintiff acknowledges receiving cash but was unable to recollect whether she was paid for the "rounding off" hours. Thus, both sides faced significant risk if this matter went to trial. Additionally, Plaintiff was concerned not only about trial, but the possibility of Defendants appealing an adverse judgment, thereby lengthening the litigation further. Lastly, collection is always a risk where protracted litigation proceeds against a small business owner. Given the bona fide dispute between the parties, and the factors discussed above, the settlement is a fair and reasonable compromise of the parties' claims and defenses. Moreover, given the time and inherent uncertainty involved in further litigation, including a jury trial and potential appellate practice, it is in Plaintiff's interest to resolve this matter and receive the compensation guaranteed by this settlement without further delay.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

As the Second Circuit has held, "[a] presumption of fairness, adequacy and reasonableness may attach to a … settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotes omitted). Here, experienced counsel for the parties engaged in at least two mediation sessions with a court appointed mediator and then continued arms' length negotiations regarding potential settlement over the course of several weeks. Counsel discussed the merits of their respective claims and defenses and engaged in extensive discussions of the facts in dispute.

*Possibility of Fraud or Collusion*

As courts in this district have held, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). The settlement presented by this motion was reached only after extensive back-and forth discussions between experienced counsel, and by counsel with their respective parties. Each party had an opportunity to evaluate the strengths and weaknesses of their case, as well as the time and expense that would have been involved in further litigation. The settlement was a fair and reasonable compromise by the parties. There was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**PLAINTIFF'S COUNSEL'S FEES ARE FAIR AND REASONABLE**

Pursuant to the Settlement Agreement and the contingency retainer between Plaintiff and her counsel, Plaintiff's counsel will receive one-third of the settlement after deducting costs and

expenses. That is, Plaintiff's counsel will receive $749.20 for pre-paid expenses (service of process fee and filing fees) and $12,500 as attorneys' fees.

The courts in this Circuit "routinely grant[ed] requests for one-third of the settlement funds. *Febus v. Guardian First Funding Group, LLC*, 870 F.Supp.2d 337, 339 (S.D.N.Y. 2012) (citing *Johnson v. Brennan*, 10-cv-4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011). While the Court may apply the "percentage of the fund" method or the lodestar method, the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). This is because the "percentage of the fund" method aligns the interest of the Plaintiff and his counsel, whereas the lodestar method disincentivizes early settlement, "tempts lawyers to run up their hours, and compel[ ] district courts to engage in a gimlet-eyed review of line-item fee audits." *Ibid.* "Nonetheless, the Court still considers all the "*Goldberger* factors" to confirm the reasonableness of this award." Febus, 870 F.Supp.2d at 339. The *Goldberger* factors are:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of the litigation ...;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000)). Here, the factors weigh in favor of approving Plaintiff's counsel's fee representing one-third of total settlement.

Plaintiff was represented in this matter by Scott Hur and Robert Lash, both partners at the law firm of Hur, Lash & Choe, LLP. Robert Lash is a graduate of Cornell University's School of Industrial and Labor Relations and received his J.D. from the University of Michigan. He has devoted his more than 26 years of legal practice to civil litigation throughout the country, with an emphasis on employment matters, contract disputes and class actions. Scott Hur is a graduate of New York University and Seton Hall Law School. He has been practicing law for over 13 years and has handled numerous employment matters, particularly focused on wage and hour cases, representing both plaintiffs and defendants in state and federal court in matters involving the Fair Labor Standards Act and New York Labor Law. The lead counsel, Scott Hur, spent 37.3 hours in this matter, of which 22.50 hours were spent for litigation-related matters and 14.80 hours were spent on two mediations, settlement negotiation, and drafting the Settlement Agreement. Additionally, Robert Lash spent 6.2 hours in this matter. Both Scott Hur's and Robert Lash's billing rate for this matter was at $400 per hour.

Plaintiff's counsel undertook this matter on a standard one-third contingency fee basis. "Contingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Dey v. Saifi*, No. 1:17-CV-02049, 2018 U.S. Dist. LEXIS 51446, at *8 (S.D.N.Y. Mar. 26, 2018); *Aquino v. Fort Washington Auto Body Corp.*, 16 Civ. 390, 2017 U.S. Dist. LEXIS 78344, at *10 (S.D.N.Y. May 23, 2017) (approving award of one-third of settlement amount as attorneys' fees plus costs) (citing, inter alia, *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234 (LB), 2013 U.S. Dist. LEXIS 134207, 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving

5

attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

To the extent the Court examines Plaintiff's counsel lodestar as a cross-check, the amount of attorneys' fees sought, net of out-of-pocket expenses, is less than the lodestar and reflects a multiplier of 0.718, which is far lower than multipliers often approved by courts in this Circuit. *See*, *e.g.*, *Hall v. ProSource Techs., LLC*, 14 Civ. 2502 (SIL), 2016 U.S. Dist. LEXIS 53791, 2016 WL 1555128, at *17 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.08); *Himrod v. Cygnus Med., LLC*, 2020 U.S. Dist. LEXIS 502, at *5-6 (S.D.N.Y. Jan. 2, 2020) (finding "A multiplier near 2 reflects sufficient compensation for the risk associated with contingent fees in FLSA cases"; approving a multiplier of 2.23 times the lodestar calculation). The courts have also found that, "[b]ecause the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360 (AKT), 2020 WL 4047897, at *2 (E.D.N.Y. July 17, 2020) (citation omitted).

## CONCLUSION

For the reasons set forth above the parties respectfully request that the Court approve the settlement as reflected in the Settlement Agreement, approve the attorneys' fee award as fair and reasonable, and dismiss this matter with prejudice.

Thank you for the Court's consideration in this matter.

Respectfully submitted,

/s/ Scott K. Hur_____
Scott K. Hur
Hur, Lash & Choe, LLP
*Attorneys for Plaintiff*

The Court has reviewed the settlement documents for fairness in accordance with the FLSA and Second Circuit law, see, e.g., *Cheeks* v. *Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015), and has concluded that the terms are fair and reasonable.  It should be noted, however, that the Court is not in this endorsement opining specifically on the reasonableness of the rates charged by the attorneys and paralegals representing Plaintiff.

Accordingly, the settlement is approved, and the Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The parties are directed to submit a stipulation of dismissal for the Court to so-order.

Dated:     May 10, 2023                SO ORDERED.
           New York, New York

                                       HON. KATHERINE POLK FAILLA
                                       UNITED STATES DISTRICT JUDGE